FILED
2011 Sep-26  PM 12:18
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **SHARON D. REATHERFORD,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **3:10-cv-3600-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

*Pro se* Plaintiff Sharon D. Reatherford ("Ms. Reatherford") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence, and, therefore, **AFFIRMS** the decision denying benefits.

### I. Procedural History

Ms. Reatherford filed her application for Title II disability insurance

benefits on March 20, 2007, alleging a disability onset date of January 3, 2007[1],

from blindness in the left eye and "tumor on nerve in both feet." (R. 76). After

the denial of her application on June 19, 2007, (R. 46), Ms. Reatherford requested

a hearing before the ALJ on August 10, 2007, (R. 51), which occurred almost two

years later, on February 24, 2009. (R. 21). At the time of the hearing, Ms.

Reatherford was 52 years old with a high school education. (R. 24, 25). Her past

relevant work included light and unskilled work as a tee shirt packer where she

"folded shirts, tagged shirts, and bagged shirts" from 1980-2002. (R. 27, 77). Ms.

Reatherford has not engaged in substantial gainful activity since September 13,

2004, (R. 76), through her date last insured of December 31, 2007, (R. 70-72).

Three weeks after the hearing, on March 11, 2009, the ALJ denied Ms.

Reatherford's claim, (R. 13-18), which became the final decision of the

Commissioner of the SSA when the Appeals Council refused to grant review. (R.

1-5). Ms. Reatherford then filed this action *pro se* for judicial review pursuant to

section 1631 of the Act, 42 U.S.C. § 1383(c)(3), alleging that she is disabled due

to "blind left eye, chronic bronchitis, asthma, had tumors in both feet, incontinence

[ ], knee pain and back pain." Doc. 1; doc. 9 at 6.

---

[1] Ms. Reatherford initially alleged a disability onset date of September 13, 2004. (R. 65-66).

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to uphold the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the ALJ's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  This court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the ALJ; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the ALJ's factual findings even if the preponderance of the evidence is against the ALJ's findings.  *See Martin*, 894 F.2d

at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires the ALJ to undertake a five step analysis.  20 C.F.R. § 404.1520(a)-(f).  Specifically, the ALJ must determine in sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, Ms. Reatherford alleges disability because of pain, she must meet additional criteria.  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Specifically, Ms. Reatherford must meet the *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985), standard ("*Hand* standard"), which

> requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* at 1011.

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find her disabled unless the ALJ properly discredits her testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if

the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability.  *Id*.

## IV.  The ALJ's Decision[2]

The issue in this case is the ALJ's finding that Ms. Reatherford was not disabled prior to the expiration of her insured status on December 31, 2007.  (R. 15).  Ms. Reatherford contends that the ALJ's decision is not supported by substantial evidence and asks this court to overturn the decision.  Based on its review of the ALJ's decision, the court finds no reversible error and concludes that the ALJ's decision is due to be affirmed.  As an initial matter, the court notes that in performing the five step analysis, initially, the ALJ determined that Ms. Reatherford had not engaged in substantial gainful activity between January 3, 2007, and her last insured date of December 31, 2007, and therefore met Step One. (R. 15).  The ALJ acknowledged that Ms. Reatherford's combination of severe conditions of "chronic obstructive pulmonary disease ("COPD"), a history of tumors on nerves in both feet, and blindness in her left eye" met Step Two.  *Id*. The ALJ proceeded to the next step and found that Ms. Reatherford did not satisfy

---

[2] Ms. Reatherford was represented by counsel at the hearing before the ALJ.  It is not clear from the record when Ms. Reatherford's counsel withdrew.  Presumably, Ms. Reatherford was represented throughout the administrative level, but counsel withdrew before Ms. Reatherford filed her appeal.

Step Three since her impairments neither met nor medically equaled the

requirements for any listed impairment.  *Id*.  Although the ALJ determined Ms.

Reatherford did not meet Step Three, consistent with the law, the ALJ went on to

Step Four, in which he held that through the date Ms. Reatherford was last

insured, she "had the residual functional capacity to perform the full range of light

work" and could perform her past relevant work as a light and unskilled packer

because the work "did not require the performance of work-related activities

precluded by the claimant's [RFC]."  (R. 17).  Because the ALJ answered Step

Four in the negative, again, consistent with the law, the ALJ determined that Ms.

Reatherford is not disabled.  (R. 18); *see also McDaniel*, 800 F.2d at 1030 ("A

negative answer to any question other than Step Three, leads to a determination of

'not disabled.'").

## V.  Analysis

The court turns now to Ms. Reatherford's contentions.  Specifically, it

appears that Ms. Reatherford is claiming that the ALJ committed a mistake in

three ways when he determined that Ms. Reatherford is not disabled:  (1) by

challenging Ms. Reatherford's credibility regarding her statements concerning the

intensity, persistence, and limiting affects of her symptoms in reaching his finding

that Ms. Reatherford's combination of impairments did not prevent her from

performing light work, doc. 9 at 5-6, (2) by relying on consulting physician Dr.

Linda Clemmons because "Dr. Clemmons was not the person [Ms. Reatherford]

saw or spoke with, it was a person named Tonya," doc. 9 at 6, and (3) by failing to

have a vocational expert at the hearing, *id*.  The court has reviewed each of Ms.

Reatherford's contentions and for the reasons stated below, the court disagrees

with Ms. Reatherford that the ALJ committed reversible error.

A.    *Ms. Reatherford failed to establish that she is unable to work because of her
      left eye blindness.*

First, the court begins with Ms. Reatherford's contention that she is disabled

due to the blindness in her left eye.  Unfortunately for Ms. Reatherford, this

contention is without merit.  Ms. Reatherford  became blind in her left eye at age

three after being shot with a BB gun.  Doc. 9 at 1; R. 17.  Despite the blindness in

that eye, Ms. Reatherford was able to work, including her last job at Tee Jays as a

tee shirt folder and packer from 1980 until she was laid off in September 2002.[3]

(R. 77).  Moreover, she has 20/25 vision in her right eye, (R. 127), and is able to

---

[3] Ms. Reatherford worked various jobs starting in 1977, and began working at Tee Jays in
1980.  Doc. 9 at 1; R. 25.  She worked at Tee Jays until she was laid off in 2002, just a few years
before the plant shut down.  (R. 26; Doc. 9 at 1).  Like most individuals in the textile industry,
there were no other textile factories in the area for her to go to for work.  Instead, the
unemployment office offered Ms. Retherford training to receive a commercial driver's license,
and in furniture upholstery and cosmetology, and she passed on that because she stated she
"couldn't do this type work."  Doc. 9 at 5.  Ultimately, because it is clear that Ms. Reatherford
would still be working if Tee Jays had not closed, this proves fatal to her disability claim.

drive.  (R. 89-92).  All of these facts refute Ms. Reatherford's contention that she

is disabled due to blindness in her left eye.  (R. 26-27, 94).  In fact, they establish

that she is able to work despite her blindness.  Therefore, her disability claim due

to blindness fails.

B.      *The ALJ did not err in finding Ms. Reatherford's statements regarding the*
        *intensity, persistence, and limiting effects of her symptoms are not credible.*

        The court turns now to the remainder of Ms. Reatherford's contentions.

First, as to Ms. Reatherford claim that the ALJ erred in not considering the

combined effects of her impairments when he found that her "statements

concerning the intensity, persistence and limiting effects of these symptoms are

not credible to the extent they are inconsistent with the above residual functional

capacity assessment" of a full range of light work, (R. 16), this argument fails also.

The record is clear that the ALJ considered the combined effect of Ms.

Reatherford's impairments and symptoms:  "In making this finding, the

undersigned has considered all symptoms and the extent to which these symptoms

can reasonably be accepted as consistent with the objective medical evidence and

other evidence," (R. 19), and "Based on the record as a whole, the undersigned

finds that even considering the combined effects of the claimant's impairments

with resulting pain, she retains the ability to perform a light level of exertional

activity," (R. 17).  Therefore, the record does not support Ms. Reatherford's contention that the ALJ did not consider the combined effects of her impairments.

As to the ALJ's finding that Ms. Reatherford was not credible, (R. 16), it is based on the ALJ's assessment of  Ms. Reatherford's Physical Activities Questionnaire, where Ms. Reatherford noted that she cooks meals and cleans her home daily, but does very little shopping.  (R. 88).  Regarding household chores, Ms. Reatherford noted that she "can't do but so much cleaning and finish by spreading them out from one day to the next," and that she has "days when I can only do very few of them."  (R. 90).  Significantly, Ms. Reatherford noted that her condition does not prevent her from any personal care activities (bathing, dressing, shaving, doing hair), preparing meals, shopping for and unloading items from a car, or driving a car.  (R. 89-92).  Ms. Reatherford noted further that her foot and knees hurt when standing and that she can stand for 10 -15 minutes, that her foot hurts when walking and that she can walk for 15-20 minutes, and that her neck and back hurt when sitting and that she can sit for 45 minutes.  *Id*.  Ms. Reatherford indicated also that pain sometimes prevents her from doing her usual activities and that she treats it with Aleve, Tylenol, and Advil.  (R. 93).

All of these statements support the ALJ's finding that Ms. Reatherford is not credible when she claims she cannot work.  Moreover, the court notes also that

Ms. Reatherford's statements in the Questionnaire are consistent with her

testimony at the hearing that she does housework, drives to the store, and takes

care of herself during the day.  (R. 30-31).  Unfortunately for Ms. Reatherford,

although it is not medical evidence, her  own assessment of her ability to perform

activities of daily living undermines her claim that she cannot perform any light

work.

In addition to Ms. Reatherford's own assessment of her abilities, the ALJ

considered also the medical evidence in determining that Ms. Reatherford could

perform light work.  Based on this court's review of the medical evidence, the

ALJ's finding is supported by substantial evidence.  For example, as it relates to

Ms. Reatherford's eye sight, the record contains progress notes from the Eye

Foundation Hospital from January 8, 1980, through March 3, 2006.  (R. 124).

Three of the last four entries, October 31, 2002, October 23, 2003, and March 3,

2006, indicate that Ms. Reatherford was "[d]oing great," and "[d]oing fine." [4]  *Id*.

No additional information was provided.

The other medical entries include documents from May 15, 2007, where the

record shows that Ms. Reatherford received a disability examination by Dr. Linda

_____

[4] The June 14, 2005, entry is illegible, but it appears that the second word is "better."  (R. 124).

Clemmons ("Dr. Clemmons"), although Ms. Reatherford contends that she was

actually seen by a person named Tonya, rather than Dr. Clemmons. Doc. 1 at 3.

However, "Linda C. Clemmons, M.D. Lister Healthcare Physician Progress Notes"

is listed on both progress notes pages and "Linda Clemons [sic], MD" is in the fax

stamp at the top of each page. (R. 125-26). The last page of the report states

"Frank G. Gillis, MD dictated but not read LCC/hmj." (R. 126). Although the

court cannot resolve the discrepancy regarding Drs. Clemmons' and Gillis' names

appearing on the report, it nevertheless appears that one of them examined Ms.

Reatherford. In any event, regarding Ms. Reatherford's vision, the report states

that Ms. Reatherford's chief complaint is left eye blindness and that her vision in

the right eye was 20/25. (R. 125). The report notes that Ms. Reatherford's "stress

and urge incontinency not currently being treated," *id*., her lungs were clear to

auscultation with no audible wheezing, her back had no deformities, tenderness or

spasms, she was able to walk on her heels but not on her toes, and could perform

"a full squat and rise from that position," (R. 125-26). Ms. Reatherford was

diagnosed with left eye blindness, stress and urge incontinence, and right foot

pain. (R. 126).

Finally, on June 15, 2007, Dr. Richard Carter completed a medical disability

determination, and noted Ms. Reatherford's complaints that she could not stand on

her foot, and problems with her right eye.  (R. 127).  Dr. Carter's examination

revealed 20/25 vision in her right eye, a "normal ambulatory gait without the use

of any assistance devise," and "heel walk normal, cannot perform toe walk."  *Id*.

Dr. Carter opined that "Claimant's [medically determinable impairments] cannot

be expected to produce some of the above stated symptoms and functional

limitations.  Claimant's statements about symptoms and functional limitations are

not credible as the severity alleged is not consistent with the objective findings

from the evidence in the file."  *Id*.

Dr. Carter's report, the reports of Drs. Clemmons and Gillis, and the Eye

Foundation notes are the only medical records from the relevant period at issue.

Unfortunately for Ms. Reatherford, these records do not support her contention

that she is disabled.  In fact, they establish that the ALJ's determination is

supported by substantial evidence.

Moreover, even if the court considers the evidence outside of Ms.

Reatherford's insured status of December 31, 2007, the ALJ's decision is still

supported by substantial evidence.  In that regard, the court notes that on August

25, 2008, and September 15, 2008, Ms. Reatherford was evaluated by urologist,

Dr. Alvin Sago, M.D., for the presence of blood in her urine.  (R. 134-39).  Dr.

Sago diagnosed Ms. Reatherford with microhematuria (blood in urine),

cystourethrocele (herniation of the bladder), and stress urinary incontinence.  (R. 137).  Dr. Sago prescribed Ditropan and scheduled Ms. Reatherford for a CT of the abdomen and pelvis, which she received on August 29, 2008.  *Id.*  The CT scan revealed a "1 to 2 mm calculus lower pole right kidney without obstructive uropathy.  Tiny cyst lower pole of the right kidney is suggested.  No significant abdominal or pelvic abnormalities otherwise noted."  (R. 140).  On September 15, 2008, Dr. Sago reevaluated Ms. Reatherford and observed that her bladder was "within normal limits except cystourethrocele," and that "ditropan has helped her bladder.  Still has stress urinary incontinence, perhaps some decrease."  (R. 134).  On September 15, 2008, Dr. Sago performed a cytoscopy, which confirmed microhematuria and cystourethrocele.  (R. 139).  There are no additional records concerning Ms. Reatherford's incontinence.

Ms. Reatherford was seen also by family practice specialist Dr. Kenneth D. Kiser ("Dr. Kiser") on May 2, 2008, (R. 153), May 12, 2008, (R. 152), June 2, 2008, (R. 151), and September 4, 2008, (R. 149).  It appears that Ms. Reatherford visited Dr. Kiser on other occasions, but the progress notes are sparse and illegible.[5]  On May 6, 2008, Dr. Kiser ordered chest and sinus x-rays to evaluate

---

[5] Although Dr. Kiser's progress notes are largely indecipherable, it appears that on September 4, 2008, he assessed Ms. Reatherford for asthma, hypothyroidism, back pain, lumbago, and cervicalgia.  (R. 149).

Ms. Reatherford's complaints of shortness of breath. (R. 168). The chest x-ray revealed that Ms. Reatherford's "heart and madiastinum appear normal. Lungs appear clear and well aerated. No pleural effusion or pneumothorax is noted, " and the x-ray of her paranasal sinuses was normal. *Id*. Later that month, on May 22, 2008, Dr. Kiser ordered x-rays of Ms. Reatherford's thoracic and lumbar spine and knees to evaluate Ms. Reatherford's complaints of back and knee pain. The thoracic spine x-ray report stated that there were "[n]o findings to suggest fracture or subluxation" and that there were "[c]hanges compatible with mild degenerative disc disease." (R. 164). The knee x-ray was negative for fracture of dislocation, but detected "mild bilateral medial compartment join space narrowing." (R. 163). The lumbar spine x-ray was "unremarkable." (R. 162). Ms. Reatherford also testified that Dr. Kiser prescribed her inhalers to treat her chronic obstructive pulmonary disorder ("COPD") and advised her to quit smoking, although she still smokes a pack or more of cigarettes per day. (R. 29, 34).

Finally, although Ms. Reatherford testified that she suffers from pain in her feet, that a tumor was surgically removed from her left foot, and that she received injections to treat a tumor on her right foot, (R. 27-28), the medical evidence does not contain any information regarding that procedure or her post-operative care, and includes only an insurance statement from Dr. Jeffery Schneider dated from

August 31, 2004, through October 25, 2004.[6]  (R. 174-75).  Regarding her ability to walk or stand on her feet, Ms. Reatherford testified that she can vacuum for about ten to fifteen minutes, and load her laundry in the washer before having to sit down.  (R. 38).

This comprises the full extent of Ms. Reatherford's medical record the ALJ had.  It does not appear that Ms. Reatherford complained of pain to other physicians or was prescribed any medications to treat severe pain.  In fact, Ms. Reatherford testified that she takes over-the-counter pain relievers Tylenol, Advil, and Aleve.  (R. 93).

Considering Ms. Reatherford's impairments in total, the ALJ's finding that Ms. Reatherford's statements concerning the limiting effects of her symptoms were not credible and that she can perform her past work as a light and unskilled packer is supported by substantial evidence.  First, although Ms. Reatherford was apparently diagnosed with COPD, her chest x-rays were normal.  Further, she has continued to exacerbate that condition by smoking one to two packs of cigarettes a day against her doctor's advice.  Second, Ms. Reatherford has not consistently

---

[6] Ms. Reatherford's counsel stated at the hearing that he had "been working for two months on getting those records from Dr. Schneider.  He has not been very cooperative."  (R. 40).  Apparently, Ms. Reatherford still does not have these records because she stated in her filing in this court that the ALJ informed her that the "records from Dr. Snyder [sic] hadn't come."  Doc. 9 at 6.

sought treatment for her incontinence and, in fact, Dr. Clemmons noted that Ms. Reatherford was not currently being treated for incontinence.  (R. 124).  Moreover, during her second visit with Dr. Sago in September 2008, the progress reports note that her incontinence may have decreased.  (R. 134).  Third, regarding Ms. Reatherford's contention of pain in her feet, knees, and back, because she failed to provide an underlying impairment or cause of pain, and is able to perform daily living activities, squat, and heel walk, her subjective complaints of pain alone neither meet the pain standard nor provide this court a basis to overturn the ALJ's decision.  Ultimately, Ms. Reatherford bears the burden of providing medical evidence to establish her disability and she failed to meet that burden here.  *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Waldrop v. Comm'r of Soc. Sec.*, 2010 WL 2017647 at *4 (11th Cir. May 21, 2010), citing *Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991); *see* 20 C.F.R. § 416.912(a) ("[Plaintiff] must furnish medical or other evidence that we can use to reach conclusions about your medical impairment(s)."); 42 U.S.C. § 423(c)(5)(A) ("Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques [ ] must be considered in reaching a conclusion as to whether the individual is under a disability.").  Therefore, to the extent Ms. Reatherford contends that the ALJ did not consider the combined

effects of her conditions, she is mistaken because the record here shows that the

ALJ in fact did so.  Moreover, the ALJ's decision is supported by substantial

evidence.

*C.  The ALJ did not err by failing to develop the record through testimony from a vocational expert at the hearing.*

Finally, to the extent that Ms. Reatherford is claiming that the ALJ erred by

failing to question a vocation expert during the hearing, this argument fails.  At

Step Four of the sequential evaluation process, the ALJ determined that Ms.

Reatherford was capable of performing her past relevant work as a packer.  (R.

17).  Therefore, the ALJ had no need to develop the record further through

vocational expert testimony:  "We have held that the testimony of a vocational

expert is only required to determine a disability claimant's residual functional

capacity where claimant has proved he cannot return to his past work."  *Lamb v.*

*Bowen*, 847 F.2d 698, 704 (11th Cir. 1988), citing *Schnorr v. Bowen*, 816 F.2d

578 (11th Cir. 1987); *Ehrisman v. Astrue*, 377 Fed. Appx. 917, 920 (11th Cir.

2010) ("Furthermore, because the ALJ found [Plaintiff] not disabled at step four of

the sequential evaluation process, we need not address [not taking testimony from

a vocational expert] at step five.").  Accordingly, the ALJ committed no error

when he decided not to seek the testimony of a vocational expert.

## VI.  Conclusion

In light of Ms. Reatherford's failure to support her disability contention by objective medical evidence, the court concludes that the ALJ's determination that Ms. Reatherford is not disabled is supported by substantial evidence.  The Commissioner's final decision is, therefore, **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

Done the 26th day of September, 2011.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE